**GOLDSBERRY v LEFEVRE**

Ohio Appeals, Montgomery Co

No 1390. Decided Feb 8, 1937

Fitzgerald & Fitzgerald, Dayton, for plaintiff.

Bradford Coolidge, Dayton, Samuel S. Markham, Dayton, for defendant.

## OPINION

By HORNBECK, J.

The action in the trial court was for damages for the wrongful death of plaintiff's decedent. The amended petition averred that on September 1, 1932 at about 4:30 o'clock P. M., plaintiff's decedent, Alice B. Goldsberry, was walking south on the Lebanon Pike in Montgomery County, Ohio; that she was and remained off of the concrete or paved portion of the highway and walked upon the gravel shoulder east of the paving; that the defendant was operating his motor car on said highway at the dangerous rate of speed of forty miles or more per hour; that he did not have his car under control; that he neglected to observe what was ahead of him on the highway; that he had a full and unobstructed view of plaintiff's decedent; that as he approached her his rate of speed continued and he could not stop his car in the distance between him and decedent after he had seen or could have seen her by ordinary powers of observation; that without giving decedent any warning or chance to escape, with gross negligence

drove his car to the extreme right of the road and that he struck and killed decedent at a point off the highway and on the graveled portion adjacent thereto and on the east side thereof.

James Goldsberry was the widower of decedent and the names and ages of eight of the children of the Goldsberrys are set forth in the petition as beneficiaries under the statute. The prayer of the amended petition is for damages in the sum of $20,000.

Among the specifications of negligence of the original petition was the following:

"that at said time the defendant, Emil Le-Roy LeFevre, was operating his automobile or car on said highway at a speed of 40 miles per hour or more and **at a greater speed than was reasonable or proper, and without due regard for the traffic, surface and width of the road and highway and without due regard for the conditions then existing and at greater sped than was possible to permit him to bring his car to a stop within the assured clear distance ahead. \* \* .**"

The court on motion struck that portion of the averment which is underscored upon the authority of **Harris v Webb, 22 O N P (N S) 359.**

The amended answer put in issue the capacity of plaintiff as administrator of the estate of Alice B. Goldsberry, deceased, admitted that at the time set forth in the petition Alice B. Goldsberry was walking south on the Lebanon Pike along the gravel shoulder east of the paved portion of the pike between Stroop Road and David Church Road; admits that he was then operating his automobile along said pike and that he and the decedent had a full and unobstructed view of each other; denies specifically all the averments of negligence and further avers "that the decedent walked or stepped into the side of his automobile, striking it at a point in the central portion thereof, sustaining injuries which caused her death."

The second defense, contributory negligence of plaintiff's decedent, is specifically averred in that plaintiff's decedent without looking or otherwise exercising her faculties to observe the approach and position of defendant's said automobile, negligently and carelessly and suddenly turned westwardly from a position of safety on the gravel shoulder of said pike and stepped into the right side of defendant's automobile as it was passing when she knew or in the exercise of ordinary care should have known of the approach and position of defendant's automobile; that she stepped onto and upon the paved portion of the Lebanon Pike without looking in both directions and that she negligently failed to remain in a position of safety to the east of the paved portion of the highway.

The reply was a denial of any contributory negligence on the part of plaintiff's decedent.

Upon trial had and at the conclusion thereof, counsel for plaintiff requested certain special charges to be given to the jury before argument. Among these were the following, which the court refused to give:

"No. 1: The language of §12603 **GC**, providing that no person shall drive any motor vehicle upon any road or highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead, is a specific requirement of law, a violation of which constitutes negligence per se, that is, negligence in itself.

"No. 2: Proof that the beneficiaries sustained the relation to the person killed required by the Statute seems sufficient to uphold an award of substantial damages, and verdicts for substantial amounts may be returned and sustained without direct or affirmative evidence of pecuniary loss.

"No. 3: No person shall operate a motor vehicle in and upon the public roads and highways at a speed greater or less than is reasonable and proper, having due regard to the traffic, surface and width of the road or highway and of any other conditions then existing, and no person shall drive any motor vehicle in and upon any public road or highway at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead.

"No. 4: In an action for wrongful death it is unnecessary to show more than that the deceased bore the relation of wife and mother to the persons for whose interests the action is brought, in order to authorize substantial, as distinguished from nominal damages."

These requests were made separately and the plaintiff excepted to the refusal of the court to give them.

The court also, at the request of counsel for defendant, submitted two special interrogatories to the jury for answer in the event that it returned a general verdict:

"No. 1: Could plaintiff's decedent in the exercise of ordinary care have seen Mr. LeFevre's approaching car in time to have avoided the accident?

"No. 2: Was plaintiff's decedent on the paved portion of the road immediately after the accident?"

The jury returned a general verdict for the defendant and answered both special interrogatories affirmatively. Counsel for plaintiff objected and excepted to the submission of the special interrogatories.

The plaintiff filed a motion for new trial, consisting of eight grounds, six of which were specific and the first and eighth of which were general. The eighth ground was "other errors of law occurring at the trial of said cause prejudicial to the right of this plaintiff by which this plaintiff was prevented from having a fair trial." The motion for a new trial was overruled, judgment entered on the verdict and an appeal on questions of law was perfected.

The evidence in this case, insofar as germane to the questions presented on the proceedings on appeal is that the plaintiff's decedent on the day of the accident was walking with her son Robert in a southerly direction on the gravel or berm to the east of the highway proper. The day was hot and plaintiff's decedent was carrying an umbrella over her right shoulder to shield her from the sun. The son testifies that his mother was at all times on the gravel, at least two feet east of the paved portion of the highway and that he was on the gravel 3½ feet to the east of the paved portion of the highway. While plaintiff's decedent and her son continued to move southwardly a Ford sedan driven by Charles W. Weidle with a passenger, Frank Bird, who was riding in the rear seat of the Ford, passed the pedestrians, then stopped his car, with the purpose of taking them in as passengers. The Ford was parked on the west side of the road or to its right thereof, some fifty feet beyond the pedestrians with its left front and rear wheels on the highway. Following the Ford out of Dayton was another car, whose driver was not identified. This car came on and turned to the left of the parked Ford car for the purpose of passing it. The defendant, with his wife as a passenger, was driving his Chrysler Coach northwardly on the Lebanon Pike and approaching the parked Ford and the pedestrians. At about the time that the unidentified car passed the Ford, defendant's automobile also passed the Ford and the

unidentified car to the right thereof. From the time that the Ford had stopped for the purpose of taking on the pedestrians they continued to walk southwardly in the gravel to the east of the highway. The parked Ford, the oncoming unidentified car and plaintiff's decedent and her son, were in view of defendant for a distance of several hundred feet before he struck plaintiff's decedent.

Mr. Weidle, a passenger in the Ford car, states he was fearful that the pedestrians would undertake to cut diagonally across the highway and into the path of one of the oncoming cars but that so long as he could see plaintiff's decedent she continued to walk in the gravel where she had been at all times and was so moving when the unidentified car passed the Ford and cut off his view from plaintiff's decedent.

The son was the only eye witness to the impact of the defendant's car and plaintiff's decedent and testified that:

"We were walking south in the gravel and a car waved at us to pick us up, and he stopped ahead of us, and we were walking along and another car came and started past his car, and Lefevre coming down there from the south and swerved out on the gravel and hit mother."

It is testified and not denied that after the impact and when plaintiff's decedent was picked up she was lying on the improved portion of the road with her head toward the north in a direction opposite to that in which she was walking. It also appears that there were splotches of blood on the gravel, the closest of which was at least three inches from the paved portion of the road and estimated by some witnesses to have been two feet to the east of the paved portion. Robert, the son, testified that the edge of the right front bumper struck his mother.

The defendant did not testify on direct examination in his own behalf but was called for cross examination by the plaintiff. He admits in his answer and in his testimony that plaintiff's decedent was walking in the gravel to the east of the improved portion of the road and he does not state that she at any time changed her position, nor does he say where he was driving at any time prior to the accident or at the time thereof. He does, however, deny that he swerved his car and says that he went straight through, also, that he was very close to the unidentified

car as he passed it, was frightened by its proximity and thought it had hit him.

Mrs. LeFevre, defendant's wife, testifies that she was riding on the right side of the coach with her husband; that she appreciated the position of both automobiles ahead of them and saw plaintiff's decedent and her son walking in the gravel; that she had a clear view of the face of plaintiff's decedent at all times up to a period immediately before the impact. The effect of Mrs. Lefevre's testimony will best be appreciated by a rather extended quotation from the record. On direct examination these questions were put and answers made: Page 133—

"Q. Now, Mrs. Lefevre, can you just turn to the Jury and tell what happened from that time on?

"A. Well, we saw these folks walking on the road, this mother and boy, and she made no attempt to see us going across the road at all. She and the boy stayed out there in the gravel, and Mr. Lefevre and I got closer to her. **She was still there walking, as far as I could see. She was still walking**; the last I seen of her it looked as though she was just about to pass our car, and this other car that was coming from the north was going at a pretty good rate of speed and passed us very quickly, and just as it passed we felt this bump on our door of our car, and I turned and looked back to see what had happened, and I saw this woman lying on the road * * * ." (Emphasis ours.)

At page 135:
"I will ask you these more or less specific questions; Will you state, Mrs. Lefever, whether or not Mr. Lefever swerved his car off the side of the road onto the gravel just before or at the time that Mrs. Goldsberry came in contact with the car?

"A. He did't swerve the car.

"Q. I will ask you whether or not you can tell us what part of your car first came in contract with Mrs. Goldsberry?

"A. The side of our car, the door, that is where she plunged into, she plunged into the door of the car. I didn't see her do it.

"Q. Can you tell us whether or not Mrs. Goldsberry was in front of your automobile?

"A. She was not. She was off, she must have started to go across this road to where this car was parked and was going to pick her up, and she came right into the door of the car."

It will thus be observed that Mrs. Lefevre does not undertake to fix the position of plaintiff's decedent when struck except by a factual conclusion that though the witness did not see it, plaintiff's decedent plunged into the door of the car. Mrs. Lefevre says that the last time that she saw Mrs. Goldsberry before the accident she was yet in the gravel; that her husband did not swerve the car but did not say that it was not off to the side of the road or onto the gravel just before or at the time that Mrs. Goldsberry came in contact with the car, as would have been responsive to the question.

There was testimony of several witnesses, all of whom were related by blood or marriage to plaintiff's decedent, to effect that the defendant had on two occasions stated that he drove over and onto the gravel and there struck plaintiff's decedent; that he was caused to do so by the proximity of the oncoming unidentified car as it passed the parked Ford and defendant's car. These statements were denied by the defendant when he was on the stand on cross examination.

Two witnesses testified that following the accident they saw blood on the right side of the front bumper of defendant's car. This is denied by one witness, who says that the mark was rust and another that the defendant said it was red paint. Three witnesses, Mrs. Lefevre, Mr. Fox, the justice of the peace, and Clarence Ketsel, the deputy sheriff, testified as to a dent on the right side of defendant's car, the purpose of this testimony being to show that the impact of the car with plaintiff's decedent caused a dent and that it was on the side of the car and not on the front thereof. Mrs. Pearl Graham says that the dent was on the right front door post. William Fox states that there was a little bump on the right hand door close to the rear post and Mr. Ketsel says that there was a dent in the car about middleways of the window on the post that comes up on the door.

The deputy sheriff, who went to the hospital where plaintiff's decedent was taken after the accident and there talked with Robert, testified that he said that his mother stepped into the car and that Mr. Lefevre was not at fault. Mrs. Lefevre also testifies that on the way to the hospital, while Robert was riding on the running board of defendant's car, he said that his mother had stepped into defendant's car and that he was not to blame.

In considering the errors alleged we shall

follow the order set forth in the brief of counsel for plaintiff.

The court erred in sustaining appellee's motion to strike certain words from appellant's original petition.

This relates to that portion of the original petition which in terms charged violation of the "assured clear distance ahead" provision of §12603 GC.

We have stated much of the evidence, some of which is not germane to the immediate question under consideration, but which is requisite to a discussion of some of the questions hereinafter presented.

In our judgment it appears from the evidence that there was a factual development which required application of the "assured clear distance ahead" portion of §12603 GC, but an examination of the amended petition indicates a failure to set up operative facts which would require the court to determine that there was a specification of negligence requiring a charge under the "assured clear distance ahead" part of §12603 GC. The only averment which could in any wise relate to such a situation would be that,

"he neglected to observe what was ahead of him on said highway; that driving north upon said highway and approaching and crossing the intersection with the David Church Road, defendant had full and unobstructed view of the decedent; that defendant's speed continued to be so great that he could not stop his car in the distance between him and the decedent after he had seen or could have seen the decedent by ordinary powers of observation."

It will be noted that there is no pleading of the ultimate facts of the position of the parked Ford automobile, the unidentified automobile and defendant's automobile as he approached the place where plaintiff's decedent was walking. It is these operative facts which invoke the provisions of §12603 GC, all of which may be drawn from the evidence, but none of which appears in the amended petition.

However, in the original petition the exact terms of the statute were plead with none of the above mentioned operative facts set forth. In this situation the trial court properly struck that portion of the petition which was but a copy of the statute.

We recognize the difficulty with which counsel for plaintiff is confronted, in that specifications of negligence must be definitely set forth, else they will not be con-

sidered by the trial court. Evidential matters cannot be plead and the distinction between operative facts and evidence is difficult of interpretation. However, under the cases it is not proper to charge the terms of a statute only. In holding that the trial court was correct in striking the allegation from the petition in the instant cause, we are not approving in is entirety **Harris v Webb, 22 O.N.P. (N.S.) 359,** nor are we required to follow Chief Justice Marshall's obiter in the opinion at pages 110 and 111 of **Steel Company v Sheller, 108 Oh St 106.**

SECOND: THE COURT ERRED IN REFUSING TO ALLOW WITNESSES CALLED BY THE APPELLANT TO REFRESH THEIR RECOLLECTIONS BY REFERENCE TO STATEMENTS PREVIOUSLY MADE BY THEM AND REDUCED TO WRITING.

This error is directed to the testimony of a witness for the plaintiff, Frank Bird. Mr. Bird was a passenger in the Ford sedan which a short time before the accident had stopped on the west side of the road facing south for the purpose of taking on plaintiff's decedent and her son as passengers. Mr. Bird had testified to his observation of pertinent facts incident to the accident and for the purpose of refreshing his recollection as to what Mr. Lefevre said immediately after plaintiff's decedent was struck, counsel submitted to him a copy of a statement which had theretofore been made by the witness on some other hearing incident to the cause. The court refused to permit the witness to use the statement to refresh his recollection.

The record discloses that no objection was made or exception taken to the ruling of the trial court. As this cause was tried in November, 1935, before the effective date of the New Appellate Code, such action was necessary to properly bring the claimed error to the attention of this court.

THIRD: REFUSING TO SUBMIT BEFORE ARGUMENT CERTAIN WRITTEN INSTRUCTIONS REQUESTED BY THE APPELLANT.

Supporting the action of the trial court it is urged that it does not appear that the requests to give these instructions were in writing. We have examined the record with care and though we have every reason to believe that the special requests were in writing, it cannot be so determined from the record.

There is but one special instruction, No. 4, requested by the plaintiff before argument, appended to the bill of exceptions, though all five of the special charges requested by the defendant are part of the bill.

It is essential to the application of the law respecting the obligation of the trial court to give special charges before argument, that they be in writing when presented and this essential not appearing, we could not predicate a finding of prejudicial error, though we might conclude that one or more of the special instructions should have been given.

For possible help in this case in the future, we express the opinion that special instructions 2, 3 and 4 in the form tendered were not proper charges to be given, because they are abstract propositions of law not drafted with respect to issues of the case, nor are they based upon any factual determination to be made by the jury as a prerequisite to the application of the principles of law therein set forth. Special Instruction No. 1 was properly refused because of the failure to plead facts making it applicable.

FOURTH: THE COURT ERRED IN SUBMITTING TO THE JURY, OVER OBJECTION OF COUNSEL FOR APPELLANT, SPECIAL INTERROGATORIES REQUESTED BY THE APPELLEE:

This claim of error is directed to Special Interrogatories Nos. 1 and 2, heretofore set forth. There is nothing inherently improper in the language employed in Special Interrogatory No. 1 in connection with a proper charge.

We see no reason whatever for the presentation of Interrogatory No. 2. The answer to this question was without effect on the ultimate questions of the negligence of defendant or the contributory negligence of plaintiff's decedent. There was no dispute in the evidence as to the position of the body of plaintiff's decedent after she was struck. The fact that she lay upon the paved portion of the highway on the easterly side thereof after the impact could be employed by the plaintiff or the defendant to support their respective contentions. The answer supports an evidential and not an ultimate fact. The pertinent query which would have been of benefit and would have determined an ultimate question in this case is: "Where was the plaintiff's decedent at the time that she was struck by defendant's automobile?" However, the submission of the interrogatory should not have confused the jury because it related to a fact concerning which there was no dispute whatever under the record and as to which the court had told the jury that there was no dispute.

FIFTH: THE COURT ERRED IN FAILING TO CHARGE THE JURY AS TO THE PROPER MEASURE OF DAMAGES.

We see no necessity for discussing at length this ground of error, inasmuch as there was a general verdict for the defendant. Upon any viewpoint of the charge of the court, if the jury had found that the negligence of the defendant proximately caused the injury to plaintiff's decedent and no contributory negligence appeared, the jury would have been required to return damages in some sum greater than nominal damages. Inasmuch as no such damages were returned, it is evident that the jury did not reach the question and error if any on the part of the court in stating the measure thereof could not have prejudiced the cause of plaintiff.

We come, then, to a consideration of the eighth ground of the motion for a new trial, which is relied upon, together with all other grounds of the motion, in the brief of plaintiff. The ground is that because of other errors occurring at the trial, which are not specifically set forth, the plaintiff was prevented from having a fair trial. This raises the question of any error of law which resulted prejudicially to the plaintiff.

The issuable facts in this case were simple. The cause of the plaintiff was grounded upon the claim that the defendant's car struck plaintiff's decedent while she was on the gravel and off the highway proper. The jury then could have been told, in so many words, that unless it found that the accident occurred off the paved portion of the highway it should return its verdict for the defendant. This, then would remove any question touching the duty of plaintiff's decedent respecting her own safety if the impact occurred on the paved portion of the highway.

Upon the charge as given it was vital to the plaintiff's cause that full explanation be made to the jury of the rights and obligations of plaintiff's decedent, so long as she remained on the berm of the highway. She was required, of course, to exercise ordinary care for her own safety but obviously

this duty enjoined upon her no obligation whatever to anticipate that the defendant would leave the traveled portion of the highway and come over and strike her while she was at a place where she had a right to be. It, then, was essential that as the charge treated the question of her contributory negligence, both as it related to her obligation while on the gravel and in the event that she was on the highway it should mark the distinction between the duty enjoined upon her in the respective situations. Upon this subject the court said to the jury in the general charge, at page 160 of the record:

"Both parties, Alice Goldsberry and defendant, are presumed to have seen what was directly in front of them immediately before the impact if each maintained, in the exercise of ordinary care, a lookout to the front, which, of course, was their duty under the law,—both their statutory and common law duty."

Later, at the bottom of page 160 and top of page 161 the court said:

"Alice Goldsberry and her son had the right to traverse the gravel shoulder of the highway and located east of the highway,— the paved portion of the highway,—and had the right to assume that the operator or operators of approaching vehicles and motor cars coming towards them on the east side of the paved highway from the south would, in the exercise of ordinary care, continue to operate their motor cars on the east side of the paved portion of the road without leaving the pavement, until and unless they observed some vehicle actually over onto the shoulder or berm or some vehicle required by circumstances apparent to them or which, in the exercise of ordinary care, should have been apparent to them, to shortly thereafter pull over onto or towards the shoulder in front of, along side of, or near to them."

The court at the bottom of page 153 said: "Some of the more important issues of fact in this case are these: Where was the decedent, Alice Goldsberry, at the time of the impact with reference to the gravel shoulder and with reference to the east edge of the pavement? Second, where was defendant's car located at the time of the impact with reference to the east edge of the pavement and with reference to the gravel shoulder. Third, what was the speed of defendant's car, that is, immediately before the impact and, incidental to that,

was the car under control? Fourth, did decedent and defendant maintain and keep a lookout for each other? Reducing that to simple language, were they observing each other immediately before the impact?"

Three of these issues of fact were very properly emphasized but there was danger in the fourth, inasmuch as there was no explanation of the relative obligations of the defendant and plaintiff's decedent to maintain a lookout depending upon their location whether on or off the highway.

We doubt if the portions of the charge quoted gave the jury the understanding of the obligation enjoined upon plaintiff's decedent within the meaning of the term "ordinary care," if the accident occurred while she was walking on the gravel. If the jury did not appreciate that there was a marked difference in the care that she would be required to observe if the accident occurred at a place where she had a right to be or if it occurred when she was walking in the paved portion of the highway, then when it returned its general verdict and when it answered defendant's special interrogatory No. 1, it may have erred in the conclusions there reached.

We find no testimony in chief from which a presumption of contributory negligence of plaintiff's decedent could arise. If there was any issue on the contributory negligence of plaintiff's decedent if the accident occurred on the gravel, which is a serious question, then the burden of proving that fact was upon the defendant.

The charge permitted the jury to determine if a presumption of contributory negligence could arise in plaintiff's own testimony, which was erroneous. The court also said at page 158:

"To prove his case plaintiff must not only establish that the defendant was guilty of one or more of the statutory or common law acts of negligence charged, but must also prove that such negligence was the direct and proximate cause of decedent's death while the decedent herself was in the exercise of ordinary care."

This makes it incumbent upon the plaintiff to prove that the defendant's negligence was the sole proximate cause of plaintiff's death, which would relieve him from liability if the jury was of opin-

ion that the negligence of the driver of the unidentified car was also a proximate cause of the death of plaintiff's decedent. This charge places the burden upon the plaintiff to establish that his decedent was in the exercise of ordinary care when she was struck. This was improper. **B & O. v Whitaker, 35 Oh St 627; Maddox v Columber, 114 Oh St 178; Cleveland Ry. Co. v Goldman, 122 Oh St 73.**

The charge in a later part thereof correctly places the burden of proof. Inasmuch as it is incorrect in one place and correct in the other, the jury may not have been able to determine in which instance the charge was correct. **Montanari v Haworth, 108 Oh St 8; Rapp v Becker et, 4 O.C.C. (N.S). 139.**

The charge as a whole shows marked attention to detail and careful study of the legal principles involved. The court undertook at great length to discuss the testimony and to state the particulars wherein the evidence was disputed or undisputed. If this procedure is adopted and the court assumes a fact which is material to the issue which is denied it is error. **Clem v State, 43 Oh St 332.** One such statement in our judgment appears in the charge. At page 153:

"The uncontradicted evidence shows that decedent's body fell onto and was lying wholly on the pavement and at a place along and near to the east edge thereof, with the head facing north; that there were blood marks on the gravel adjacent to the cement where decedent's body was lying after the impact. As to whether or not there was any blood on the pavement proper, there is some dispute in the testimony; that decedent's right leg was bruised and injured and, according to statements of counsel, it seems to be conceded that she was injured in the head,—that her skull was fractured and as a result of that fracture there was some internal hemorrhage which resulted fatally to Alice Goldsberry; that **the body was falling along the right side of the car during the process of being struck and not in front of the car.**"

We have searched in vain for support for the statement which is underscored. It was most damaging to the plaintiff's cause for the reason that the court was establishing the theory of the defendant that plaintiff's decedent walked into the right side of the car and that the impact was not in front at the bumper as testified by Robert Goldsberry. Then follows this statement:

"The only witness on this particular point was Robert Goldsberry, that is, so far as actually seeing the thing happen is concerned, and you may give whatever weight, of course, to his statement with reference to that matter which you desire."

This statement in conjunction with that which we have heretofore underscored is prejudicial because taken together the court says to the jury in substance, that Robert Goldsberry had testified that his mother's body was falling along the right side of the car during the process of being struck and in effect that she was not struck by the front of the car. What Robert did say on the subject at page 104 was that the right edge of the front bumper struck his mother and then the car went on past her. The charge is too broad in that it took from the jury without any qualification whatever, the right of weighing Robert's testimony as to material evidentiary matter.

The record is replete with the tender and acceptance of evidence which clearly was improper and in instances manifestly prejudicial. All of this was accepted without any objection whatever by counsel. We therefore offer no criticism because the court did not on its own motion intervene and prevent the jury hearing the testimony. We shall not further prolong this opinion by setting out all of the instances to which we refer. One only follows. On cross examination Mr. Goldsberry was interrogated respecting an account of the accident which appeared in "the papers," and he was asked if he did not tell Squire Fox that Robert had told him that the accident had happened just as the papers said. Obviously, the witness could have known how the accident happened only by hearsay and to interrogate him on the subject and in the manner in which it was permitted was highly improper. **Mutual L. Ins. Co. v Schmidt, 60 O. Rep. 901; 40 Oh St 112.**

Squire Fox also, at page 124, was permitted to say that on the day of the accident Mr. Goldsberry had told him in the response to a query: "How in the world did it happen?" that it happened "just like the papers" and in one instance the full account as appearing in one of the papers was read to a witness who knew and could

have known nothing of the manner in which the accident occurred.

We are not passing on this case as upon the weight of the evidence. We recognize that there is a clear issue of fact under the pleadings whether or not the defendant is liable to answer to the plaintiff. We are satisfied, however, from a fair consideration of all the record, that error intervened to the prejudice of the plaintiff in the trial of the cause. The two-issue rule will not save the verdict. There is such marked difference in the testimony of the witnesses on this record as to require that the law of the case be presented to the jury in the simplest terms, and that the rights and obligations of the parties be well-defined.

For errors of law occurring in the trial of the cause the judgment will be reversed and remanded for a new trial.

CRAIG, PJ, concurs.
BARNES, J, concurs in judgment but on other grounds.